1

2

3

4

5

6                                      UNITED STATES DISTRICT COURT

7                                      EASTERN DISTRICT OF CALIFORNIA

8

9    JUAN CUEVAS GUZMAN,                              No.  1:25-cv-01015-KES-SKO (HC)

10                     Petitioner,

11           v.                                       ORDER GRANTING PRELIMINARY
                                                      INJUNCTION
12   TONYA ANDREWS, Administrator of                  Doc. 3
     Golden State Annex Detention Facility,
13   POLLY KAISER, Acting Field Office
     Director of the San Francisco Immigration
14   and Customs Enforcement Office, TODD
     M. LYONS, Acting Director of United
15   States Immigration and Customs
     Enforcement, KRISTI NOEM, Secretary of
16   the United States Department of Homeland
     Security, and PAMELA BONDI, Attorney
17   General of the United States,

18                     Respondents.

19

20          Petitioner Juan Cuevas Guzman is a noncitizen who has been present in the United States

21   for approximately thirty years.  In 2011, an immigration judge ordered him released on bond

22   pending removal proceedings, which were administratively closed in 2014.  On January 25, 2025,

23   ICE agents arrested petitioner outside his home on a warrant issued pursuant to 8 U.S.C.

24   § 1226(a).  On July 22, 2025, an immigration judge held that petitioner was not entitled to a bond

25   hearing under 8 U.S.C. § 1226(a), finding that he was being held under 8 U.S.C. § 1225(b)(2)(A),

26   which mandates detention.

27          On August 13, 2025, petitioner filed a petition for writ of habeas corpus, Doc. 1, and a

28   motion for temporary restraining order, Doc. 3.  Petitioner argues that his re-detention without a

                                                     1

1  pre-deprivation bond hearing violates the Due Process Clause.  Alternatively, he argues that he is

2  statutorily entitled to a bond hearing under 8 U.S.C. § 1226(a) and the immigration judge erred in

3  concluding otherwise.

4      The Court held a hearing on petitioner's motion.  At the hearing, the Court raised with the

5  parties whether petitioner's motion should be converted into a motion for preliminary injunction

6  because the standard is the same and respondents had notice and opportunity to respond through a

7  written opposition, a supplemental opposition, and through oral argument at the hearing.  *See*

8  Docs. 8, 10, 12.  The parties agreed that the motion should be converted to one for a preliminary

9  injunction.  As the parties agree that the motion is ripe for conversion and do not believe that

10  additional briefing is needed, petitioner's motion is converted to a motion for preliminary

11  injunction.

12      For the reasons set forth below, petitioner's motion is granted.

13  **I.      Background**

14      Petitioner is a 49-year-old citizen of Mexico who has resided in Oakland, California for

15  approximately thirty years.  Doc. 1 at ¶ 23; Doc. 1-1, Ex. A at ¶¶ 1, 3.  He has two children, both

16  of whom are U.S. citizens.  Doc. 1-1, Ex. A at ¶ 1.  He arrived in the United States in 1995 and

17  has worked in a range of jobs, including custodial services, restaurant services, furniture

18  construction, laundry services, and most recently, package delivery services.  *Id.* ¶¶ 2–4.  Many of

19  his siblings also live in the United States, including his sister, who lives in Oakland.  *Id.* ¶ 3.

20      Petitioner was convicted of three criminal offenses prior to his 2011 immigration

21  proceedings:  In 2000, he was convicted of corporal injury on a spouse in violation of California

22  Penal Code § 273.5(a), but that conviction was vacated on May 5, 2025.  Doc. 1-1 at ¶ 23; *see*

23  *also* Doc. 1-1, Ex. D at 29.  In 2007, he was convicted of disturbing the peace in violation of

24  California Penal Code § 415, a misdemeanor, and spent two days in county jail.  *Id.*  In 2011, he

25  was convicted of domestic battery in violation of California Penal Code § 243(e)(1), a

26  misdemeanor, and spent fifteen days in county jail.  *Id.*

27      On December 5, 2011, upon his release from county jail, ICE detained petitioner.  Doc. 1-

28  1, Ex. D.  The Department of Homeland Security ("DHS") issued a Notice to Appear, charging

1    him as removable pursuant to 8 U.S.C. § 1182(a)(6)(A)(i).  Pet. ¶ 24.  The same day, DHS issued

2    a Notice of Custody Determination pursuant to 8 U.S.C. § 1226(a) and ordered his release on a

3    $10,000 bond.  Doc. 1-1 at ¶ 3; Doc. 1-1, Ex. E.  Petitioner sought review of this custody

4    determination before an immigration judge, who ordered his release on a $6,000 bond.  Doc. 1-1

5    at ¶ 3; Doc. 1-1, Ex. F.  Petitioner paid the bond and was released on December 22, 2011.

6    Doc. 1-1, Ex. G.

7        Petitioner sought relief in his removal proceedings by filing an application for

8    Cancellation of Removal and Adjustment of Status based on the hardship to his U.S. citizen

9    children, and an application for asylum, withholding of removal, and protection under the

10   Convention Against Torture.  Doc. 1-1 at ¶ 4.  He also filed a petition for U visa with the United

11   States Citizenship and Immigration Services ("USCIS") in 2014.  *Id.* ¶ 5.  His removal

12   proceedings were administratively closed in 2014 based on his pending U visa application.  *Id.*

13   USCIS denied his U visa application on April 20, 2016.  Doc. 1-1, Ex. J at 44.  In 2022, petitioner

14   was convicted of misdemeanor domestic battery in violation of California Penal Code

15   § 243(e)(1), for an incident that occurred in 2020, and sentenced to 28 days in jail.  Doc. 1-1 at

16   ¶ 23.[1]

17       On December 6, 2024, an immigration officer issued a warrant for petitioner's arrest

18   pursuant to 8 U.S.C. § 1226(a).  *See* Doc. 1-1, Ex. I.  On January 25, 2025, ICE arrested petitioner

19   outside his home.  *Id.* ¶ 7; Doc. 1-1, Exs. I–J.  ICE transferred him to Golden State Annex, where

20   he is now detained.  Doc. 1-1 at ¶ 7.  ICE then made a custody determination pursuant to 8 U.S.C.

21   § 1226(a) and determined that petitioner would be detained without bond.[2]  Doc. 1-1, Ex. J.  DHS

22   then moved to reopen petitioner's administratively closed removal proceedings, and an

23   immigration judge granted that request.  Doc. 1-1 at ¶ 7.

---

[1] In 2015, petitioner was charged with annoying or molesting a child in violation of California
Penal Code § 647.6(a)(1), but those charges were dismissed in 2020.  Doc. 1-1 at ¶ 23.

[2] Petitioner's notice of custody determination stated that petitioner has no aggravated felony
convictions, and it does not appear that the government ever treated him as detained pursuant to
8 U.S.C. § 1226(c), a statutory provision which mandates detention for noncitizens with certain
criminal convictions.  *See* Doc. 1-1, Ex. J.

1    Petitioner obtained counsel on March 18, 2025.  Doc. 1-1 at ¶ 8.  On July 3, 2025,

2    petitioner filed a motion for a bond hearing with the immigration court.  *Id.* ¶ 17.  In support of

3    his motion for release on bond, petitioner filed 150 pages of evidence, including a declaration

4    from his 18-year-old daughter and ten letters of support.  *Id.* ¶ 16.

5    At the bond hearing on July 22, 2025, the immigration judge found that she lacked

6    jurisdiction to consider petitioner's bond request because she determined that he was detained

7    pursuant to 8 U.S.C. § 1225(b)(2)(A), which mandates detention, rather than 8 U.S.C. § 1226(a).

8    *Id.* ¶ 18.  Petitioner has appealed this decision to the Board of Immigration Appeals.  *Id.* ¶ 19.

9    On August 13, 2025, petitioner filed a petition for writ of habeas corpus, Doc. 1, and a

10   motion for temporary restraining order, arguing that his re-detention without a bond hearing

11   violates the Due Process Clause of the Fifth Amendment and that the immigration judge's failure

12   to consider petitioner's bond request under § 1226(a) violates the Immigration and Nationality

13   Act ("INA"), Doc. 2.  The government filed an opposition on August 15, 2025.  Doc. 8.  The

14   Court then requested supplemental briefing on petitioner's statutory claim, Doc. 9, and the

15   government filed a supplemental opposition on August 28, 2025, Doc. 10.  Petitioner filed a reply

16   on September 2, 2025.  Doc. 11.  The Court held a hearing on September 5, 2025.  Doc. 12.

17   **II.     Legal Standard**

18   The standards for issuing a temporary restraining order and a preliminary injunction are

19   "substantially identical."  *See Stuhlbarg Int'l Sales Co. v. John D. Bush & Co.,* 240 F.3d 832, 839

20   n.7 (9th Cir. 2001).  "A preliminary injunction is an extraordinary remedy never awarded as of

21   right."  *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553

22   U.S. 674, 689–90 (2008)).  "A plaintiff seeking a preliminary injunction must establish that he is

23   likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of

24   preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the

25   public interest."  *Id.* at 20 (citing *Munaf*, 553 U.S. at 689–90; *Amoco Prod. Co. v. Vill. of*

26   *Gambell, AK*, 480 U.S. 531, 542 (1987); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311–12

27   (1982)).  "Likelihood of success on the merits is a threshold inquiry and is the most important

28   factor."  *Simon v. City & Cnty. of San Francisco*, 135 F.4th 784, 797 (9th Cir. 2025) (quoting

1   *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020)).  "[I]f a plaintiff can only

2   show that there are serious questions going to the merits—a lesser showing than likelihood of

3   success on the merits—then a preliminary injunction may still issue if the balance of hardships

4   tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied."  *Friends of the*

5   *Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations

6   omitted).

7       **III.    Discussion**

8           **a.  Likelihood of Success on the Merits**[3]

9           Petitioner argues that he is likely to succeed on the merits of his claims alleging that his

10  detention without a bond hearing is unlawful.  Petitioner argues that his re-detention without a

11  pre-deprivation bond hearing violates the Due Process Clause.  *See* Doc. 1 at ¶¶ 39–71, 87–90;

12  Doc. 3-1 at 15–24.  In the alternative, petitioner argues that he is statutorily eligible for a bond

13  hearing under 8 U.S.C. § 1226(a) and that the immigration judge erred in concluding that he was

14  mandatorily detained pursuant to 8 U.S.C. § 1225(b)(2)(A).  *See* Doc. 1 at ¶¶ 72–86, 91–93; Doc.

15  3-1 at 24–28.  The Court begins with petitioner's statutory claim.

16          **i.  Statutory Claim**

17          **1.  Administrative Exhaustion**

18          The government's primary argument in response to petitioner's statutory claim is that the

19  appropriate remedy, if the immigration judge erred, is an appeal to the Board of Immigration

20  Appeals ("BIA"), rather than a habeas petition in this Court.  Doc. 10 at 4.  This appears to be an

21  argument that petitioner should be required to exhaust his administrative remedies.

---

[3] The government argues that petitioner's motion goes beyond a request to preserve the status quo and instead inappropriately seeks "an ultimate determination on the merits," citing *Senate of Cal. v. Mosbacher*, 968 F.2d 974, 978 (9th Cir. 1992).  Doc. 8 at 5.  In *Mosbacher*, the trial court ordered as preliminary relief the release of data that the state sought to keep private, and once the data was released the state would "have lost the whole case for all practical purposes." *Mosbacher*, 968 F.2d at 978.  In that context, the Court held that "judgment on the merits in the guise of preliminary relief is a highly inappropriate result."  *Id.*  But awarding temporary relief of the kind requested here does not constitute a final judgment on the merits in this case or foreclose further litigation of the issues raised in petitioner's habeas petition.  *See Castellon v. Kaiser*, No. 1:25-cv-00968-JLT-EPG, 2025 WL 2373425, at *7 n.7 (E.D. Cal. Aug. 14, 2025) (rejecting similar government argument).

In a case such as this one, the "exhaustion requirement is prudential, rather than jurisdictional," and therefore may be waived "if 'administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void.'" *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)).  As explained in section (b) of this Order, petitioner will suffer irreparable injury without a temporary restraining order.  This Court therefore "follows the vast majority of other cases which have waived exhaustion based on irreparable injury when an individual has been detained for months without a bond hearing, and where several additional months may pass before the BIA renders a decision on a pending appeal." *Marroquin Ambriz v. Barr*, 420 F. Supp. 3d 953, 962 (N.D. Cal. 2019); *see Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1254 (W.D. Wash. 2025) (waiving prudential exhaustion requirement in similar circumstances).[4]

### 2.  Petitioner's Detention is Governed by 8 U.S.C. § 1226(a).

Two statutory sections govern the detention of noncitizens prior to a final order of removal: 8 U.S.C. §§ 1225 and 1226.  Section 1225 governs the detention of noncitizens seeking admission into the United States.  As relevant here, section 1225(b)(2)(A) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained . . . ." 8 U.S.C. § 1225(b)(2)(A).  "A noncitizen detained under [s]ection 1225(b)(2) may be released only if he is paroled 'for urgent humanitarian reasons or significant public benefit' pursuant to 8 U.S.C. § 1182(d)(5)(A)." *Gomes v. Hyde*, 25 Civ. 11571, 2025 WL 1869299, at *2 (D. Mass. July 7, 2025).  "Other than this limited exception (which is not implicated here), detention under [section] 1225(b)(2) is considered mandatory . . .

---

[4] In this case, pursuit of administrative remedies might also be futile given that, on September 5, 2025, the BIA held that noncitizens who are present in the United States without admission are "seeking admission" for purposes of 8 U.S.C. § 1225(b)(2)(A) and must be detained.  *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (B.I.A. 2025).  However, petitioner's situation appears to be distinguishable from that at issue in *Matter of Yajure Hurtado*, as petitioner had been released on bond for over thirteen years, on an immigration judge's release order under § 1226(a), when ICE re-arrested him (also on a § 1226 warrant) in 2025.

1    [and] [i]ndividuals detained under [section] 1225 are not entitled to a bond hearing." *Lopez*

2    *Benitez v. Francis*, No. 25 CIV. 5937 (DEH), 2025 WL 2371588, at *3 (S.D.N.Y. Aug. 13,

3    2025).

4        While section 1225 "authorizes the Government to detain certain aliens *seeking admission*

5    *into the country*," section 1226 "authorizes the Government to detain certain aliens *already in the*

6    *country* pending the outcome of removal proceedings." *Jennings v. Rodriguez*, 583 U.S. 281, 289

7    (2018) (emphasis added).  Section 1226(a) "applies when a noncitizen is 'arrested and detained'

8    '[o]n a warrant issued by the Attorney General,' 8 U.S.C. § 1226(a)."  *Gomes*, 2025 WL

9    1869299, at *5.  Section 1226(a) sets out the "default rule" for noncitizens already present in the

10   country, *Jennings*, 583 U.S. at 288: it provides that, once the government has "arrested and

11   detained" a noncitizen "[o]n a warrant," the government "may continue to detain" the arrested

12   noncitizen or "may release" the noncitizen on "bond" or "conditional parole."  8 U.S.C.

13   § 1226(a)(1)–(2).  "Section 1226(a), therefore, establishes a discretionary detention framework."

14   *Lopez Benitez*, 2025 WL 2371588, at *3 (internal citations omitted).  An immigration officer

15   makes the initial determination to either detain or release the noncitizen, but after that decision

16   has been made, the noncitizen may request a bond hearing before an immigration judge.  8 C.F.R.

17   § 1236.1(c)(8), (d)(1).  At any such bond hearing, "the burden is on the non-citizen to 'establish

18   to the satisfaction of the Immigration Judge . . . that he or she does not present a danger to persons

19   or property, is not a threat to the national security, and does not pose a risk of flight.'" *Hernandez*

20   *v. Sessions*, 872 F.3d 976, 982 (9th Cir. 2017) (citing *In re Guerra*, 24 I. & N. Dec. 37, 38 (BIA

21   2006)).[5]

22       The government argues that the applicable detention authority in this case is

23   section 1225(b)(2)(A), as the immigration judge concluded, because petitioner is an "applicant for

24   _____

25   [5] The government argues that petitioner was provided a "bond hearing" on July 22, 2025, and
     "[t]hat is all that is required under § 1226(a)."  Doc. 10 at 3.  However, the immigration judge

26   concluded that she did not have jurisdiction to consider petitioner's bond request, *see* Doc. 1-1 at
     ¶¶ 17–18, and therefore did not consider whether petitioner was a flight risk or danger to the

27   community, as required by *In re Guerra*, 24 I. & N. Dec. 37, 38 (BIA 2006).  The government's
     argument that "petitioner has been given all of the procedural protections of a § 1226(a) bond

28   hearing" is therefore incorrect.  *See* Doc. 10 at 3.

1   admission." *See* Doc. 10 at 2–3.  However, the government's argument disregards that in 2011

2   petitioner was released on bond by an immigration judge under section 1226(a), that ICE

3   rearrested petitioner in July 2025 on a warrant under section 1226(a), and that ICE then made an

4   initial custody redetermination under that statute.

5           In 2011, ICE arrested petitioner on a warrant issued under section 1226(a).  *See* Doc. 1-1,

6   Ex. C.  ICE then made an initial custody determination and found petitioner entitled to release on

7   bond under section 1226(a).  *See* Doc. 1-1, Ex. E.  An immigration judge subsequently granted

8   petitioner's request and ordered petitioner released on a reduced bond under section 1226(a).  *See*

9   Doc. 1-1, Ex. F.  Petitioner posted the bond and was released in December 2011.  Petitioner was

10  not re-detained in his immigration case until 2025.  In January 2025, ICE re-detained petitioner

11  on a warrant issued under section 1226(a), which states that petitioner was being arrested because

12  there are "ongoing removal proceedings."  *See* Doc. 1-1, Ex. I.  ICE then made a custody

13  determination, *see* Doc. 1-1, Ex. J, as required by section 1226(a), *see* 8 C.F.R. § 1236.1(c)(8),

14  but not section 1225(b)(2), *see* 8 U.S.C. § 1225(b)(2)(A) ("[Any alien subject to this section]

15  *shall be* detained.").  Petitioner's initial release in 2011, and ICE's subsequent re-detention of him

16  in 2025, were thus under section 1226(a).  *See Jennings*, 583 U.S. at 281 (explaining that section

17  1226(a) applies to those "already in the country"); *Gomes*, 2025 WL 1869299, at *5 (reaching the

18  same conclusion).

19          The government argues that petitioner has always been subject to section 1225(b)(2)(A),

20  and that, in 2011, the government exercised its discretion to provide him with a bond hearing

21  under section 1226(a).  Doc. 10 at 3–4.  But sections 1225 and 1226 are "mutually exclusive—a

22  noncitizen cannot be subject to both mandatory detention under § 1225 and discretionary

23  detention under § 1226."  *Lopez Benitez*, 2025 WL 2371588, at *7.  "Having elected to proceed

24  with full removal proceedings under § 1226, Respondents cannot now reverse course and institute

25  § 1225 expedited removal proceedings."  *See Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF,

26  2025 WL 2419263, at *4 (N.D. Cal. Aug. 21, 2025).

27          The Court concludes that petitioner is likely to succeed on the merits of his claim that he

28  is entitled to a bond hearing under section 1226(a).  The Court will now turn to petitioner's

8

1    constitutional claim because, as petitioner argued at the hearing, a section 1226(a) bond hearing

2    would not fully remedy the due process violation he identified.

3                          **ii.  Constitutional Claim**

4          Petitioner argues that his re-detention without a bond hearing—over thirteen years after he

5    was released on bond from immigration detention—violates the Due Process Clause of the Fifth

6    Amendment.  The Court analyzes the claim "in two steps: the first asks whether there exists a

7    protected liberty interest under the Due Process Clause, and the second examines the procedures

8    necessary to ensure any deprivation of that protected liberty interest accords with the

9    Constitution."  *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D.

10   Cal. July 14, 2025) (citing *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460

11   (1989)).  These two steps are examined in turn.

12                          **1.  Protected Liberty Interest**

13         A protected liberty interest may arise from a conditional release from physical restraint.

14   *Young v. Harper*, 520 U.S. 143, 147–49 (1997).  Even when a statute allows the government to

15   arrest and detain an individual, a protected liberty interest under the Due Process Clause may

16   entitle the individual to procedural protections not found in the statute.  *See id.* (Due Process

17   requires pre-deprivation hearing before revocation of preparole); *Gagnon v. Scarpelli*, 411 U.S.

18   778, 782 (1973) (same, in probation context); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)

19   (same, in parole context).  To determine whether a specific conditional release rises to the level of

20   a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific

21   conditional release in the case before them with the liberty interest in parole as characterized by

22   *Morrissey*."  *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation

23   marks and citation omitted).

24         In *Morrissey*, the Supreme Court explained that parole "enables [the parolee] to do a wide

25   range of things open to persons" who have never been in custody or convicted of any crime,

26   including to live at home, work, and "be with family and friends and to form the other enduring

27   attachments of normal life."  *Morrissey*, 408 U.S. at 482.  "Though the [government] properly

28   subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring

                                        9

1  and seeking authorization to work and travel, his "condition is very different from that of

2  confinement in a prison." *Id.* "The parolee has relied on at least an implicit promise that parole

3  will be revoked only if [she] fails to live up to the parole conditions." *Id.* The revocation of

4  parole undoubtedly "inflicts a grievous loss on the parolee." *Id.* (quotations omitted). Therefore,

5  a parolee possesses a protected interest in his "continued liberty." *Id.* at 481–84.

6      Petitioner's release is similar. An immigration judge released petitioner in 2011 after

7  determining that he did not pose a flight risk or danger to the community. Petitioner was able to

8  provide for his two U.S. citizen children—undoubtedly one of the most "enduring attachments of

9  normal life," *id.* at 482—one of whom has serious mental health issues. His many letters of

10  support from friends and family, included as an exhibit with his motion, show his meaningful ties

11  to his community. Doc. 1-1, Ex. O. His situation since being released in 2011 has been "very

12  different from that of confinement in a prison." *Morrissey*, 408 U.S. at 482.

13      The Court finds that petitioner has a protected liberty interest in his release. *See*

14  *Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17,

15  2025) (recognizing that "the liberty interest that arises upon release [from immigration detention]

16  is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-05259-JST, 2025 WL

17  1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have

18  been released have a strong liberty interest). The Court must therefore determine what process is

19  due before the government may terminate his liberty.

20                          **2. *Mathews* Balancing**

21      Due process "is a flexible concept that varies with the particular situation." *Zinermon v.*

22  *Burch*, 494 U.S. 113, 127 (1990). The procedural protections required in a given situation are

23  evaluated using the *Mathews v. Eldridge* factors:

24          First, the private interest that will be affected by the official action;
            second, the risk of an erroneous deprivation of such interest through
25          the procedures used, and the probable value, if any, of additional or
            substitute procedural safeguards; and finally, the government's
26          interest, including the function involved and the fiscal and
            administrative burdens that the additional or substitute procedural
27          requirement would entail.

28

                                  10

1    *Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)); *see Hernandez*, 872 F.3d 976, 993

2    (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).  Petitioner argues

3    that a proper weighing of these factors demonstrates that he should be afforded a pre-deprivation

4    bond hearing where the government bears the burden of proof.

5        Turning to the first factor, petitioner has a significant private interest in remaining free

6    from detention.  "Freedom from imprisonment—from government custody, detention, or other

7    forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."

8    *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).  Petitioner had been out of custody for over thirteen

9    years, and during that time, raised and supported his children.  His detention denies him that

10   freedom.  While petitioner sustained a misdemeanor conviction in 2022, he is entitled to a

11   determination as to whether that violation warrants modification of the immigration judge's 2011

12   release order.  *See Morrissey*, 408 U.S. at 482–84.

13       Second, the risk of an erroneous deprivation of liberty in these circumstances is

14   considerable.  *See Ramirez Clavijo*, 2025 WL 2419263, at *6; *Lopez Benitez*, 2025 WL 2371588,

15   at *12.  Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is justified

16   when a noncitizen presents a risk of flight or danger to the community.  *See Zadvydas*, 533 U.S.

17   at 690; *Padilla*, 704 F. Supp. 3d at 1172.  "[B]ecause [p]etitioner's substantial liberty interest is at

18   stake, due process [] requires [the government] to prove by clear and convincing evidence that

19   [petitioner] is a flight risk or danger to the community *before* depriving [him] of that liberty,"

20   even though petitioner already has other procedures available to him.  *Ramirez Clavijo*, 2025 WL

21   2419263, at *6 (emphasis added); *see Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011),

22   *abrogated on other grounds by Jennings v. Rodriguez*, 583 U.S. 281 (2018) (invoking due

23   process principles and explaining that "the substantial liberty interest at stake" warranted placing

24   the burden on the government to "prove by clear and convincing evidence that an alien is a flight

25   risk or a danger to the community to justify denial of bond.").  As petitioner explained at the

26   hearing, while in a detention center hundreds of miles from his home in Oakland he has limited

27   ability to gather evidence and to contact his family and friends who would testify on his behalf at

28   the hearing, and his family and friends might not be able to travel hundreds of miles to such a

1      hearing, unlike if he had such a proceeding out of custody in the immigration court near where he

2      resided.  These considerations create a significant risk that he might be erroneously deprived of

3      his protected liberty interest, even with the availability of a post-detention section 1226(a) bond

4      hearing.

5            Third, the government's interest in detaining petitioner without a hearing is "low."

6      *Ortega*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); *Doe v. Becerra*, No. 2:25-CV-00647-DJC-

7      DMC, 2025 WL 691664, at *6 (E.D. Cal. Mar. 3, 2025).  In immigration court, custody hearings

8      are routine and impose a "minimal" cost.  *Doe*, 2025 WL 691664, at *6.  Although the

9      government does have an interest in detaining noncitizens who are a danger to the community,

10     and "there may be [some] situations that urgently require arrest[,] . . . a *pre*-deprivation hearing is

11     required to satisfy due process" absent those urgent concerns.  *Guillermo M. R. v. Kaiser*, No. 25-

12     CV-05436-RFL, 2025 WL 1983677, at *9 (N.D. Cal. July 17, 2025) (citing *Zinermon*, 494 U.S.

13     at 127).  Here, although petitioner was convicted of a misdemeanor offense in 2022, petitioner

14     was not detained by ICE until January 2025.  The government has not demonstrated an urgent

15     need to detain him before a pre-deprivation bond hearing could be held.  The government's

16     interest in detaining him without a pre-deprivation hearing is therefore low.

17           On balance, the *Mathews* factors show that petitioner is entitled to a bond hearing, which

18     should have been provided before petitioner was detained.  "'[T]he root requirement' of the Due

19     Process Clause" is "'that an individual be given an opportunity for a hearing *before* he is deprived

20     of any significant protected interest.'"  *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542

21     (1985) (quoting *Boddie v. Connecticut,* 401 U.S. 371, 379 (1971)); *see Zinermon*, 494 U.S. at 127

22     ("Applying [the *Mathews*] test, the Court usually has held that the Constitution requires some

23     kind of a hearing *before* the State deprives a person of liberty . . . .").  The Supreme Court has

24     held that Due Process requires a pre-deprivation hearing before those released on parole from a

25     criminal conviction can have their bond finally revoked.  *See Morrissey*, 408 U.S. at 480–86.  The

26     same is true for those subject to revocation of probation.  *Gagnon v. Scarpelli*, 411 U.S. at 782.

27     Numerous district courts have held that these principles extend to the context of immigration

28     detention.  *See, e.g.*, *Ramirez Clavijo*, 2025 WL 2419263, at *4–6; *Garcia*, 2025 WL 1927596, at

*5; *Pinchi v. Noem,* No. 25-CV-05632-RMI (RFL), 2025 WL 1853763, at *1 (N.D. Cal. July 4, 2025); *Ortega*, 415 F. Supp. 3d at 970; *Doe*, 2025 WL 691664, at *6; *Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854, at *2 (N.D. Cal. June 14, 2025); *Romero v. Kaiser*, No. 22-cv-02508-TSH, 2022 WL 1443250, at *4 (N.D. Cal. May 6, 2022); *Vargas v. Jennings*, No. 20-cv-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020).

With these considerations in mind, petitioner is likely to succeed on the merits.

### b. Irreparable Harm

The government argues that petitioner does not face irreparable harm because detention is statutorily authorized. Doc. 8 at 7. But the Ninth Circuit has recognized that, even though the statute authorizes detention, there may be numerous "irreparable harms imposed on anyone subject to immigration detention," such as "subpar medical and psychiatric care in ICE detention facilities, the economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to children of detainees whose parents are detained." *Hernandez*, 872 F.3d at 995.

Petitioner has established that those harms are present here. Petitioner's evidence, which the government does not contest, establishes that when ICE detained petitioner, his son lived with him full time and his daughter lived with him part time. Doc. 1-1, Ex. A at ¶ 30. However, following petitioner's detention, his son, who suffers from bipolar disorder, became homeless and moved into a shelter. *Id.*; Doc. 1-1, Ex. O. Additionally, petitioner's daughter moved out of her mother's house due to difficulties with her mother and now lacks a stable home. *See* Doc. 1-1, Ex. A at ¶¶ 34–36. Petitioner attests that he would return to work and support both of his children immediately if he were released from detention. *Id.* In addition to these harms, petitioner suffers from chronic back pain and attests that subpar medical care at the detention facility has exacerbated that pain. Doc. 1-1, Ex. A at ¶¶ 36–37. Additionally, many courts have concluded that the "loss of liberty" arising from immigration detention is a "severe form of irreparable injury." *See e.g.*, *Romero*, 2025 WL 2403827, at *11 (quoting *Ferrara v. United States*, 370 F. Supp. 2d 351, 360 (D. Mass. 2005)).

Moreover, "[i]t is well established that the deprivation of constitutional rights

1    'unquestionably constitutes irreparable injury.'"  *Hernandez*, 872 F.3d at 994 (quoting *Melendres*

2    *v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)).  "When an alleged deprivation of a constitutional

3    right is involved, most courts hold that no further showing of irreparable injury is necessary."[6]

4    *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005) (quoting Wright, Miller, &

5    Kane, Federal Practice and Procedure, § 2948.1 (2d ed. 2004)).  Petitioner has shown a likely

6    deprivation of his due process rights, so he faces irreparable harm absent a preliminary injunction.

7             **c.    Balance of Hardships and Public Interest**

8             When the government is the nonmoving party, "the last two *Winter* factors merge."  *Baird*

9    *v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (internal citations omitted).  In immigration court,

10   custody hearings are routine and impose a "minimal" cost.  *Doe v. Becerra*, No. 2:25-cv-00647-

11   DJC-DMC, 2025 WL 691664, at *6 (E.D. Cal. Mar. 3, 2025).  Thus, faced with a choice

12   "between [these minimally costly procedures] and preventable human suffering," as discussed

13   above, the Court concludes "that the balance of hardships tips decidedly in [petitioner's] favor."

14   *Hernandez*, 872 F.3d at 996 (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983)).

15           The public interest also weighs in petitioner's favor.  "The public has a strong interest in

16   upholding procedural protections . . ., and the Ninth Circuit has recognized that the costs to the

17   public of immigration detention are staggering."  *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL

18   1676854, at *3 (N.D. Cal. June 14, 2025) (citing *Jorge M.F. v. Wilkinson*, No. 21-CV-01434-JST,

19   2021 WL 783561, at *3) (N.D. Cal. Mar. 1, 2021); *see also Index Newspapers LLC v. U.S.*

20   *Marshals Serv.*, 977 F.3d 817, 838 (9th Cir. 2020) ("It is always in the public interest to prevent

21   the violation of a party's constitutional rights.") (citing *Padilla*, 953 F.3d at 1147–48).

22           **d.  Remedy**

23           The purpose of a preliminary injunction is to return the parties to the status quo ante,

24   which is "not simply [] any situation before the filing of a lawsuit, but instead [] 'the last

25   uncontested status which preceded the pending controversy.'"  *GoTo.com, Inc. v. Walt Disney*

26   _____

27   [6] The government points out that this presumption does not apply when a party fails to show a
     likelihood of success on the merits.  *See Associated Gen. Contractors of California, Inc. v. Coal.*
     *for Econ. Equity*, 950 F.2d 1401, 1412 (9th Cir. 1991).  However, as explained in the previous

28   section, petitioner has made that showing.

1    *Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000).  Petitioner's immediate release is required to return him

2    to the status quo ante—"the last uncontested status which preceded the pending controversy."

3    *Pinchi v. Noem*, 2025 WL 1853763, at *3; *Kuzmenko v. Phillips*, No. 2:25-cv-00663-DJC-AC,

4    2025 WL 779743, at *2 (E.D. Cal. Mar. 10, 2025); *see also Valdez v. Joyce*, 25 Civ. 4627, 2025

5    WL 1707737, at *5 (S.D.N.Y. June 18, 2025) (ordering immediate release of unlawfully detained

6    noncitizen); *Ercelik v. Hyde*, No. 1:25-CV-11007-AK, 2025 WL 1361543, at *15–16 (D. Mass.

7    May 8, 2025) (same); *Günaydın v. Trump*, No. 25-CV-01151, 2025 WL 1459154, at *10–11 (D.

8    Minn. May 21, 2025) (same).  Respondents are ordered to release petitioner immediately.  They

9    may not re-detain petitioner unless the government proves by clear and convincing evidence, at a

10   bond hearing before a neutral arbiter, that petitioner is a flight risk or danger to the community.

11        The bond requirement of Federal Rule of Civil Procedure 65(c) is waived.  Courts

12   regularly waive security in cases like this one, and the government has not established a need to

13   impose a security bond in this case.  *See, e.g.*, *Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir.

14   2011); *Garcia*, 2025 WL 1676855, at *3; *Pinchi*, 2025 WL 1853763, at *4; *Singh*, 2025 WL

15   1918679, at *9.

16   **IV.    Conclusion and Order**

17        Accordingly, petitioner's motion for temporary restraining order, Doc. 3, is converted to

18   a preliminary injunction and is GRANTED.  Respondents are ORDERED to release petitioner

19   immediately.  Respondents are ENJOINED AND RESTRAINED from re-detaining petitioner

20   unless they demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing

21   before a neutral decisionmaker, that petitioner is a flight risk or danger to the community such

22   that his physical custody is legally justified.

23

24   IT IS SO ORDERED.

25        Dated:    September 9, 2025        _____

26                                          UNITED STATES DISTRICT JUDGE

27

28

15